IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angel Tirado,                                  :
              Petitioner          :
                        :
                        :
        v.                             :
                        :
S.C.I. Houtzdale, Dr. M. Naji and            :
Wellpath Medical Serv., et al.,              :    No. 130 M.D. 2022
              Respondents        :    Submitted: June 4, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge (P.)
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED:  July 16, 2024

Before this Court are Wellpath Medical Services' (Wellpath) and Dr. M. Naji's (Dr. Naji) (collectively, Respondents)[1] Preliminary Objections to Angel Tirado's (Tirado) pro se Petition for Review seeking a writ of mandamus[2] and

---

[1] According to Respondents, Wellpath Medical Services' correct name is Wellpath, LLC. *See* Respondents' Prelim. Objs. at 1 n.1. "Respondents . . . are contracted medical services providers for the Pennsylvania Department of Corrections [(Department)]." *Id*. ¶ 6.

[2] Tirado titled his filing a Pro Se Equity Petition for Discretionary Review. By May 9, 2022 Order, this Court declared that it "shall be treated as a Petition for Review addressed to this Court's original jurisdiction." May 9, 2022 Order at 1. Further, although Tirado does not expressly state that his Petition is in the nature of a mandamus action, based on the relief he is requesting - an order from this Court directing Respondents to take specific action based on his medical diagnoses - Respondents have responded as such. This Court will, likewise, treat this action as one seeking mandamus. *See Williams v. Dep't of Corr.* (Pa. Cmwlth. No. 31 M.D. 2017, filed Sept. 5, 2017) (an inmate's action to compel the Department to grant him permanent bottom bunk status was in the nature of a mandamus action); *see also Kretchmar v. Dep't of Corr.*, 831 A.2d 793 (Pa. Cmwlth. 2003) (where an inmate sought to compel the Department to provide him with specific treatment, he was seeking a writ of mandamus). Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported cases included herein are cited for their persuasive value.

monetary relief (Petition). After review, this Court sustains Respondents' Preliminary Objections and dismisses the Petition.

## Background[3]

Tirado is currently incarcerated at the State Correctional Institution (SCI) at Houtzdale (SCI-Houtzdale).[4] *See* Petition ¶ 5. Tirado was diagnosed with chronic arthritis in 2013 and diabetes in 2014. *See id*. ¶ 1. He is insulin dependent. *See id*. ¶ 3. In 2017, to avoid the possibility of serious injury if he suffered hypoglycemic shock, and to reduce arthritis related stress/pain in his knee, Tirado was granted bottom bunk/bottom tier (BB/BT) status.[5] *See id*. ¶¶ 2, 4. While at SCI-Houtzdale, SCI-Houtzdale's medical staff, namely Wellpath and Dr. Naji, "negligently - carelessly terminated [his BB/BT s]tatus without first conducting any sort of medical assessment to prove whether the need for such status continue[d] to exist[]." *Id*. ¶ 5. On or before February 14 to 18, 2022, Tirado expressed his safety concerns to Respondents and asked to have his BB/BT status reinstated, to no avail. *See id*. ¶ 2.

## Facts

On March 21, 2022, Tirado filed the Petition in this Court's original jurisdiction, asking this Court to mandate that Respondents restore his BB/BT status

---

On June 15, 2022, the State Correctional Institution at Houtzdale (SCI-Houtzdale) also filed preliminary objections to the Petition. On July 7, 2022, Tirado filed a Notice of Defective Joinder requesting that this Court dismiss his action as against SCI-Houtzdale. By July 22, 2022 Order, this Court dismissed SCI-Houtzdale as a party and dismissed its preliminary objections to the Petition as moot. *See* July 22, 2022 Order at 1. Thus, only Respondents' Preliminary Objections remain before this Court for disposition.

[3] For purposes of considering the instant Preliminary Objections, this Court accepts as true the facts as Tirado alleges therein.

[4] *See* www.inmatelocator.cor.pa.gov/#/Result (last visited July 15, 2024).

[5] Tirado does not specify at which SCI he was afforded BB/BT status.

or conduct "an evaluation determining whether there is a need[,]" and direct Respondents to pay him "the sum of [$1,600.00] for unusual pain and needless suffering." Petition *Ad Damnum* Clause.

On July 12, 2022, Respondents filed the Preliminary Objections to the Petition, asserting that Tirado failed to exhaust his administrative remedies and failed to state a legally valid claim for mandamus and monetary damages. On August 3, 2022, Tirado filed an answer opposing Respondents' Preliminary Objections. The parties filed their respective supporting briefs. This matter is now ripe for this Court's review.

**Discussion**

Initially, Pennsylvania Rule of Appellate Procedure (Appellate Rule) 1516(b) authorizes any party to file preliminary objections to an original jurisdiction petition for review for the reasons specified in Pennsylvania Rule of Civil Procedure (Civil Rule) 1028. *See* Pa.R.A.P. 1516(b). Civil Rule 1028(a) authorizes any party to file preliminary objections based on failure to exhaust a statutory remedy, *see* Pa.R.Civ.P. 1028(7), and based on "legal insufficiency" (demurrer). Pa.R.Civ.P. 1028(a)(4).

> In ruling on preliminary objections, [this Court] must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be

3

> sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*McNew v. E. Marlborough Twp.*, 295 A.3d 1, 8-9 (Pa. Cmwlth. 2023) (citations omitted) (quoting *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010)). Moreover, "[w]hen ruling on a demurrer, [this C]ourt must confine its analysis to the [petition for review]." *Torres*, 997 A.2d at 1245. "Thus, th[is] [C]ourt may determine only whether, on the basis of the [petitioner's] allegations, he or she possesses a cause of action recognized at law."[6] *Fraternal Ord. of Police Lodge No. 5, by McNesby v. City of Phila.*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021).

---

[6] In their Preliminary Objections, Respondents declare that SCI-Houtzdale has restored Tirado's BB/BT status. *See* Respondents' Prelim. Objs. ¶¶ 30-33; *see also* Prelim. Objs. Ex. A at 1 (Tirado's May 10, 2022 DC-481 Medical Release Summary). Respondents also attach and reference a declaration by Keri Moore (Moore), the Department's Assistant Chief Grievance Officer in the Secretary's Office of Inmate Grievances and Appeals, describing the Department's grievance process and declaring that Tirado did not file a grievance related to his BB/BT status. *See* Respondents' Prelim. Objs. ¶ 52; *see also* Prelim. Objs. Ex. B (Moore Declaration). However, with one limited exception for writings not applicable here, "an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible [s]peaking demurrer." *Stilp v. Commonwealth*, 910 A.2d 775, 791 (Pa. Cmwlth. 2006), *aff'd*, 974 A.2d 491 (Pa. 2009) (citation and quotation marks omitted); *see also Minor v. Kraynak*, 155 A.3d 114, 124 (Pa. Cmwlth. 2017). "[Respondents] may assert facts showing that the allegations are not true . . . as an affirmative defense. But a demurrer is not an appropriate avenue to assert such facts." *Minor*, 155 A.3d at 124. Therefore, despite that Tirado acknowledges in his Answer to the Preliminary Objections that his BB/BT status has been restored, *see* Answer to Prelim. Objs. ¶¶ 31-34, and he has not filed a grievance because the process was irrelevant or unavailable to him, *see id.* ¶¶ 50-53, this Court may not consider those facts at this stage. *See DuBoise v. Rumcik* (Pa. Cmwlth. No. 566 M.D. 2020, filed May 21, 2021); *see also Mobley v. Coleman*, 65 A.3d 1048 (Pa. Cmwlth. 2013) (this Court may not rely on a speaking demurrer to sustain preliminary objections).

4

**First Preliminary Objection:**
**Mandamus Improper to Compel a Discretionary Act**

Respondents argue that Tirado cannot invoke mandamus to force a public official to perform a discretionary act, and Tirado seeks to have this Court impermissibly superimpose its judgment on a clinical decision made by Dr. Naji, who is required to exercise his judgment, discretion, and medical knowledge and training.

This Court has explained:

> "[M]andamus is an extraordinary writ which will only issue to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy." *Dotterer v. Sch. Dist. of Allentown*, 92 A.3d 875, 880 (Pa. Cmwlth. 2014) (internal quotation marks omitted). "If any one of the foregoing elements is absent, mandamus does not lie." *Id*. at 881.

*Konieczny v. Zappala*, 278 A.3d 416, 419 (Pa. Cmwlth. 2022). Mandamus "may be used to compel performance of a ministerial duty, or to compel action in a matter involving judgment or discretion." *Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018) (quoting *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1108 (Pa. 2007)). "However, it may not be used to direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken[,]" *id*., "even if the Court believes it has been exercised incorrectly." *Clark v. Beard*, 918 A.2d 155, 161 (Pa. Cmwlth. 2007). Moreover, the party seeking mandamus relief has the burden of proving his legal right to such relief. *See Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996); *see also Firearms Owners Against Crime - Inst. for Legal, Legis. & Educ. Action v. Evanchick*, 291 A.3d 507 (Pa. Cmwlth. 2023).

Here, Section 13.2.1.10.C of the Department of Corrections' (Department) Access to Health Care Procedures Manual (Health Care Manual)[7] specifies that upon new reception or transfer of an inmate from another facility, a prescribing "*practitioner will* determine" an inmate's medical necessity for *special items* and document his/her assessment in the inmate's medical records. Health Care Manual at 10-1 (bold emphasis omitted); *see also id*. at 10-4.[8] The Health Care Manual defines *special items* as "[i]tem(s) medically necessary such as medical supplies, . . . lower bunk, bottom tier cells, . . . etc." *Id*. at xx. "The *prescribing practitioner* will be responsible for making these determinations." *Id*. at 10-1 (bold emphasis omitted). The SCI's Corrections Health Care Administrator/designee will ensure that the inmate's status is properly documented, *see id*., and "ensure that all medically necessary orders for special item(s) will be carried out[.]" *Id*. at 10-2. "Once the special item[] is available at the facility," the SCI's medical personnel will provide it to the inmate, subject to conditions and periodic review schedules not relevant here. *Id*. at 10-4 - 10-5.

However, the Health Care Manual also proclaims that "[i]ssuance of a special item does not make the item the property of the inmate." *Id*. at 10-3. Moreover, the Health Care Manual declares:

> This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent

---

[7] In his opposing brief, Tirado references that the Department's BB/BT policy can be found in Section 13.2.1 of the Health Care Manual. *See* Tirado Br. at 3. Pennsylvania courts may take judicial notice of policies publicly available on the Department's website. *See Washington v. Pa. Dep't of Corr.*, 306 A.3d 263 (Pa. 2023).

[8] *See* www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/13.02.01%20Access%20to%20He alth%20Care.pdf (last visited July 15, 2024).

6

with law and to permit the accomplishment of the purpose of the policies of the Department.

*Id*. at 2. Section 93.11(a) of the Department's Regulations further announces that "[a]n inmate does not have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa. Code § 93.11(a). Thus, this Court has held that "[i]t is entirely a matter of the Department's discretion where to house an inmate." *Clark*, 918 A.2d at 160.

In addition, "[p]rison officials are afforded a wide range of discretion in the promulgation and enforcement of policies to govern internal prison operations and must be allowed to exercise their judgment and to execute those policies necessary to preserve order and maintain security within Pennsylvania's [SCIs] free from judicial interference." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014). Pennsylvania law specifically "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" *Kretchmar v. Commonwealth*, 831 A.2d 793, 799 (Pa. Cmwlth. 2003) (quoting *Inmates of the Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted)); *see also Williams v. Dep't of Corr.* (Pa. Cmwlth. No. 31 M.D. 2017, filed Sept. 5, 2017).

Based on the foregoing, Tirado has no legal right to BB/BT status, and his complaints - whether regarding the necessity therefor, the immediacy with which Respondents provided it, and/or when it expires - are "question[s] of sound professional judgment." *Kretchmar*, 831 A.2d at 799 (quoting *Pierce*, 612 F.2d at 762). In the absence of Tirado's clear legal right, Respondents' corresponding duty, and, as is discussed more fully below, when there are other adequate and appropriate

7

remedies, the Petition fails to state a legally valid claim for mandamus relief. Accordingly, this Court sustains Respondents' First Preliminary Objection.

## Second Preliminary Objection:
## Failure to State a Claim and Failure to Exhaust Administrative Remedies

Respondents argue that this Court should dismiss the Petition because it sounds in mandamus and Tirado failed to exhaust his administrative remedies where he filed this action without first filing a grievance pursuant to the Department's grievance procedure.

> The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts. The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area.

*Funk v. Dep't of Env't Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted).

The Department has established an inmate grievance policy in its DC-ADM 804, Inmate Grievance System Procedures Manual (Grievance Manual)[9] "designed to review and resolve any problems that an inmate experiences during his incarceration." *Mueller v. Pa. State Police Headquarters*, 532 A.2d 900, 903 n.4 (Pa. Cmwlth. 1987). The Grievance Manual preliminarily encourages inmates to attempt to resolve concerns regarding issues, procedures, or events occurring in the course of their confinement informally before filing an official grievance (Grievance Process). *See* Grievance Manual at 1-1. If informal measures are unsuccessful,

---

[9] *See* www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited July 15, 2024).

[t]he Grievance Process consists of three steps. In Step 1, an inmate must submit the initial grievance to the Grievance Coordinator within 15 working days of the initial incident. The Grievance Coordinator then has 15 working days to provide a written response.

In Step 2, an inmate must appeal the grievance response to the Facility Manager or Superintendent within 15 working days of receiving it. In turn, the [Facility] Manager or Superintendent must notify the inmate of his decision within 15 working days of receiving the appeal.

If still dissatisfied, an inmate in Step 3 must submit the final appeal to the Secretary's Office of Inmate Grievances and Appeals (Central Office) within 15 working days of receiving an appeal response. The Central Office then has 30 working days to respond to the inmate. The Grievance Process thus culminates in the Central Office's response.

*Kittrell v. Watson*, 88 A.3d 1091, 1092-93 (Pa. Cmwlth. 2014). This Court has concluded that "[i]f the inmate fails to complete each of these steps, he or she fails to exhaust his administrative remedies."[10] *Hill v. Wetzel* (Pa. Cmwlth. No. 699 C.D.

---

[10] This Court acknowledges that

[a]n inmate may not be required to exhaust the administrative remedies [if] those remedies are not available to the inmate. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Minor*. . . , 155 A.3d [at] 125 . . . . There are three situations where an administrative remedy is considered "unavailable." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). Second, an administrative remedy is unavailable if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

*Hill v. Wetzel* (Pa. Cmwlth. No. 699 C.D. 2021, filed Jan. 5, 2023), slip op. at 8-9. Another exception allows an inmate to challenge a statute's constitutionality or validity. *See Funk*; *see also*

9

2021, filed Jan. 5, 2023), slip op. at 7; *see also McNew v. E. Marlborough Twp.*, 295 A.3d 1, 10 (Pa. Cmwlth. 2023) ("'[W]here an adequate administrative process is available, a party may not forgo that process in favor of seeking judicial relief.' *Se. Pa. Transp. Auth. v. City of Phila.*, . . . 101 A.3d 79, 90 ([Pa.] 2014)"); *Humphrey v. Dep't of Corr.*, 939 A.2d 987 (Pa. Cmwlth. 2007), *aff'd in part*, 955 A.2d 348 (Pa. 2008) (where inmate did not allege that he appealed the denial of a grievance or any final Department order, he failed to exhaust administrative remedies). This Court has determined that inmate challenges to their medical care are subject to the Grievance Process. *See Ex rel. Bundy v. Wetzel* (Pa. Cmwlth. No. 444 M.D. 2020, filed Oct. 29, 2021); *see also Calero v. Dep't of Corr.* (Pa. Cmwlth. No. 1488 C.D. 2013, filed Mar. 20, 2014). Moreover, an inmate's failure to exhaust adequate, available administrative remedies is a bar to a mandamus action. *See Mueller*.

Here, Tirado does not state in the Petition that he availed himself of any part of the Department's Grievance Process. Even if this Court could consider Tirado's complaints to Respondents on or about February 14 to 18, 2022, as an informal first step, his failure to complete the Grievance Process bars his mandamus action. *See Hill*; *see also Humphrey*; *Mueller*. Because Tirado failed to exhaust his administrative remedies, this Court sustains Respondents' Second Preliminary Objection.

### Third Preliminary Objection:
### Failure to State a Claim for Monetary Damages

Respondents also contend that this Court should dismiss the Petition because Tirado failed to state a legally valid claim for which this Court may award monetary damages. Specifically, Respondents argue that Tirado's request for

---

*Humphrey v. Dep't of Corr.*, 939 A.2d 987 (Pa. Cmwlth. 2007), *aff'd in part*, 955 A.2d 348 (Pa. 2008). Tirado does not assert that an administrative remedy was unavailable to him, nor does he challenge a statute's constitutionality or validity.

monetary damages falls under Appellate Rule 1561(b), which allows damages for certain claims raised in an original jurisdiction petition for review, and Appellate Rule 1562(c) disallows money damages in tort actions.

Indeed, Appellate Rule 1561 provides, in relevant part:

> **(b) Original jurisdiction petitions for review.**--Where the petition for review raises questions that formerly were determinable in an action in equity, replevin, mandamus, or *quo warranto*, or for a declaratory judgment or upon a petition for a writ of *certiorari* or prohibition, or in another similar plenary action or proceeding, the court may grant the relief heretofore available in any such plenary action or proceeding.
>
> **(c) Money damages.**--Money damages arising out of tort or contract claims may not be granted under this chapter (except on review of determinations of the Board of Claims or similar agencies), but relief granted under paragraph (b) of this rule may include any damages to which the petitioner is entitled which are claimed in the petition, which are ancillary to the matter, and which may be granted by a court.

Pa.R.A.P. 1561.[11]  Thus, while this Court may award money damages for eligible claims under Appellate Rule 1561(b), it may not do so for tort actions.  *See* Appellate Rule 1561(c).

---

[11]   [Appellate] Rule 1561 concludes the description of the petition for review process, implements the statutory scheme found in various parts of the Judicial Code, [42 Pa.C.S. §§ 101-9913,] and summarizes [Appellate Rules] Chapter 15's theme that a petition for review is a plenary pleading through which a petitioner may obtain any form of relief against state government consistent with the scope of appellate court jurisdiction.

G. Ronald Darlington et al., 20A West's Pa. Prac., Appellate Practice § 1561:1 (Disposition of petition for review - Introduction) (2023-24 ed.).

11

This statement is consistent with

[Section 761(a) of the Judicial Code,] 42 Pa.C.S. § 761(a), [which provides that] the Commonwealth Court has original jurisdiction over civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

. . . .

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

42 Pa.C.S. § 761(a)(1)(v).

Th[e Pennsylvania Supreme] Court, in examining the historical context of Section 761 [of the Judicial Code], has held []:

[T]he clear intent of the General Assembly is that actions against the Commonwealth or its officers acting in their official capacity for money damages based on tort liability are outside the original jurisdiction of the Commonwealth Court and are properly commenced in the [c]ourts of [c]ommon [p]leas.

*Balshy v. Rank*, . . . 490 A.2d 415, 420-21 ([Pa.] 1985).

*Hill v. Pa. Dep't of Env't Prot.*, 679 A.2d 773, 774 (Pa. 1996). Thus, Section 761(a)(1)(v) of the Judicial Code excludes common law trespass from this Court's original jurisdiction. *See Hill*; *see also Miles v. Beard*, 847 A.2d 161 (Pa. Cmwlth. 2004).

Tirado requests $1,600.00 for pain and suffering caused by Respondents negligently and carelessly terminating his BB/BT status. *See* Petition

12

¶ 5; *see also* Petition *Ad Damnum* Clause. Therefore, he asserts tort claims against Respondents over which this Court lacks jurisdiction. Accordingly, because Tirado has failed to state a claim for which this Court may award him money damages, this Court sustains Respondents' Third Preliminary Objection.

## Conclusion

Based on the foregoing, accepting as true all well-pleaded facts in the Petition and drawing all inferences reasonably deducible therefrom in favor of the nonmoving party (i.e., Tirado), as this Court must, "the law indicates with certainty that no recovery is possible" from Respondents. *Vasquez*, 279 A.3d at 75. Therefore, this Court sustains Respondents' Preliminary Objections and dismisses Tirado's Petition.

_____
ANNE E. COVEY, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angel Tirado,  :
          Petitioner  :
  :
        v.  :
  :
S.C.I. Houtzdale, Dr. M. Naji and  :
Wellpath Medical Serv., et al.,  :  No. 130 M.D. 2022
        Respondents  :

# O R D E R

AND NOW, this 16th day of July, 2024, Wellpath Medical Services' and Dr. M. Naji's Preliminary Objections to Angel Tirado's Petition for Review (Petition) are SUSTAINED, and the Petition is DISMISSED.

_____
ANNE E. COVEY, Judge